

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JACOB DUGGER, by and through LIBBY DUGGER, as mother and next friend of JACOB DUGGER,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. CV-11-S-277-NE** |
| **VOLUNTEERS OF AMERICA NORTH ALABAMA, INC.,** *et al.,* | ) ) ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jacob Dugger, a mentally incompetent adult who sues through his mother and next friend Libby Dugger, asserts claims against Volunteers of America North Alabama, Inc., and several fictitious parties for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (the "ADA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("the Rehabilitation Act"), as well as state law claims for "negligence/wantonness," "breach of contract/warranty," outrage, assault, and "combining and concurring."[1]  The case currently is before the court on the following motions: (1) the motion to dismiss or, in the alternative, for judgment on the pleadings filed by defendant Volunteers of America North Alabama,

---

[1]*See* doc. no. 1 (Complaint).

Inc., ("defendant");[2] (2) plaintiff's motion for leave to amend his complaint;[3] and (3)

defendant's motion to dismiss all claims asserted against fictitious parties.[4]  Upon

consideration of the motions, the pleadings, and the parties' briefs, the court

concludes that the motion to dismiss is due to be granted, the motion to amend is due

to be denied, and the motion to dismiss all claims against fictitious parties is due to

be denied as moot.

## I. STANDARDS OF REVIEW

### A.   Motions to Dismiss

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a

complaint for, among other reasons, "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).[5]  This rule must be read together with Rule 8(a),

---

[2]Doc. no. 7.  Although plaintiff's complaint names several fictitious defendants, Volunteers of America North Alabama, Inc., is the only named defendant.  Accordingly, the court will hereinafter refer to that entity as, simply, "defendant."

[3]Doc. no. 8.

[4]Doc. no. 11.

[5] In full text, Rule 12(b) provides that:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.

> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The

---

(5) insufficient service of process;

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b).

plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Ashcroft*, 556 U.S. at —, 129 S. Ct. at 1949-50 (emphasis added).

**B.     Motion for Leave to Amend**

Federal Rule of Civil Procedure 15, addressing amended and supplemental pleadings, states that a court should "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

> A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) *where amendment would be futile. See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962).

*Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (emphasis supplied).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff, Jacob Dugger, is a mentally incompetent adult suffering from cerebral palsy who is suing by and through his mother, Libby Dugger.[6]  Plaintiff is confined to a wheelchair and has great difficulty moving his limbs due to partial paralysis.[7]  At all times relevant to plaintiff's claims, he was a resident at a Volunteers of America ("VOA") group home in Morgan County, Alabama.  He was admitted to that facility because he required humane care and treatment for his physical and mental impairments.[8]  Plaintiff's complaint contains the following allegations:

---

[6]Complaint, at ¶¶ 1-2, 8.

[7]*Id.* at ¶ 8.

[8]*Id.* at ¶ 9.

10.     During his residency, Jacob was subjected to abuse and neglect at the hands of VOA employees, including but not limited to Fictitious Defendants "Josh" and "Perez" and Fictitious Defendants responsible for providing his medication.

11.     Employees of the facility abused and neglected Jacob on a regular basis. Jacob was frequently placed under freezing cold water for the amusement of employees "Josh" and "Perez." This occurred even in winter time. These individual employees would strip Jacob and place him under the freezing cold water, ridiculing and laughing at him and inviting other employees to witness Jacob screaming in pain.

12.     Employees would regularly slam Jacob down on his bed when moving him. This caused Jacob a great deal of pain because his limbs are so stiff.

13.     Upon information and belief, "Josh" and "Perez" would steal Jacob's money from his account by telling him that he would have to pay them for his dinner.

14.     An employee and/or employees reported witnessing "Josh" and "Perez" smoking marijuana at the facility. They were not subjected to immediate random drug testing but were given thirty (30) days to prepare. When they arrived for the drug screen, they had someone else's urine in a baby bottle. An employee informed management that "Josh" and "Perez" were using another person's urine for the drug screen. Like the complaints of torture, abuse and neglect, management failed to address this complaint as well. Upon information and belief, VOA retaliated against the complaining employee.

15.     Another employee and/or employees, identities unknown, were required to provide Jacob with a prescribed laxative medication every day. Because of his condition of cerebral palsy, Jacob required the laxative in order to help him digest and pass his food. Because he wasn't administered the medication, he began regurgitating feces.

16.     Management at the facility, names unknown, were aware of

the abuse and neglect suffered by Jacob Dugger but did nothing to prevent it or stop it.

17. Upon information and belief, "Josh" and "Perez" had a known history of abuse and neglect of patients at the VOA facility.

18. Upon information and belief, it is a violation of VOA policy to abuse and/or neglect a resident patient and/or to fail to report suspected abuse.

19. Upon information and belief, VOA condoned, allowed, encouraged and participated in an atmosphere of inhumane treatment of its handicapped resident patients, including but not limited to Jacob Dugger and the other residents of the VOA facility in Morgan County.

20. VOA's management discouraged the reporting of abuse and neglect of the resident patients by disciplining employees who reported the neglect and/or abuse of patients.

21. VOA's management did not report this abuse and/or neglect to the parents and/or guardians of the resident patients, including to Libby Dugger, Jacob's Mother.

22. VOA allowed and encouraged an atmosphere of abuse and neglect at the Morgan County facility by ignoring employee complaints of abuse and neglect, by failing to hire, train and supervision [sic] caring and qualified personnel and by failing to stop the abuse and neglect once it was reported to management.[9]

## III.  PLAINTIFF'S PROPOSED AMENDMENT TO THE COMPLAINT

Plaintiff seeks leave to amend his complaint to add a cause of action for "Harassment Under ADA and Rehabilitation Act."  The allegations of the proposed amendment would be as follows:

---

[9]*Id.* at ¶¶ 10-22.

46.     Jacob Dugger was subjected to unlawful harassment by employees of VOA.

47.     It is unlawful under the ADA and the Rehabilitation Act to harass a disabled person.  See, e.g., Gaither v. Barron, 924 F. Supp. 134 (M.D. Ala. 1996).

48.     "EEOC regulations to the ADA state that 'it is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this part.'" Haysman v. Food Lion, 893 F. Supp. 1092 (S.D. Ga. 1995) (citing 29 C.F.R. § 1630.12).

49.     Claims of harassment under the ADA and Rehab Act are analyzed "according to Title VII hostile work environment standards." Haysman[,] at 1106.[10]

## IV. DISCUSSION

Defendant argues that plaintiff has failed to state a claim upon which relief can be granted under either the ADA or the Rehabilitation Act, and that once all federal claims have been dismissed, plaintiff's supplemental state law claims also should be dismissed because there is no independent basis upon which this court can exercise subject matter jurisdiction over those claims.

## A.     ADA and Rehabilitation Act Claims

Plaintiff's ADA claim falls under Title III of that statute,[11] which provides, in

---

[10]Proposed Amended Complaint, Exhibit 1 to doc. no. 8, at ¶¶ 46-49 (ellipses in original, bracketed alteration supplied).

[11]Title I of the ADA regulates discrimination in the workplace; Title II prohibits discrimination by public entities; and Title III prohibits discrimination by private entities in places of public accommodation.  See Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1272

pertinent part, that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  To establish a violation of Title III, a plaintiff must show: (1) that he is disabled; (2) that defendant is a place of public accommodation; and (3) that he was denied full and equal treatment because of his disability.  *See Access Now, Inc. v. South Florida Stadium Corp.,* 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001).

The framework for plaintiff's Rehabilitation Act claim is similar.  Section 504 of the Rehabilitation Act provides, in pertinent part, that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

> As the text of the statute suggests, in order to obtain relief under section 504 [plaintiffs] must establish that: 1) they are "handicapped" within the meaning of the Act; 2) they are "otherwise qualified"; 3) they are excluded from programs or activities solely because of the handicap; and 4) the programs or activities from which they are excluded are

---

(11th Cir. 2006).  Plaintiff is not employed by defendant, and defendant is a private entity; therefore, neither Title I nor Title II could apply.

operated by an agency that receives federal financial assistance.

*Harris v. Thigpen,* 941 F.2d 1495, 1522 (11th Cir. 1991).

Generally, cases involving the Rehabilitation Act are governed by the same standard as cases involving the ADA.  Consequently, Rehabilitation Act cases usually are precedent for ADA cases, and *vice versa*.  *Cash v. Smith,* 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000).

Defendant does not dispute that it receives federal funds, as required by the Rehabilitation Act, that it can be considered a "public accommodation" under the ADA, or that plaintiff suffers from a disability, as required by both statutes. Defendant nonetheless maintains that plaintiff has not asserted a viable claim for denial of equal treatment, exclusion from programs, or any other discrimination because of his disability.

A reading of plaintiff's original complaint supports defendant's argument.  For his Rehabilitation Act claim, plaintiff asserts that he "was subjected to frequent abuse and neglect during his residency at the VOA facility."[12]  He also asserts that he

> was subjected to physical abuse, humiliation, deliberate indifference, rape, neglect and/or mistreatment.   His treatment was degrading, humiliating and shocking to the conscience of members of our society. The workers assigned to protect and care for [him] failed in their duties

---

[12]Complaint, at ¶ 39.

by failing to protect him from abuse, neglect and mistreatment.[13]

For his ADA claim, plaintiff asserts that defendants "discriminated against [him] based upon his disability.  They abused and neglected him and failed to protect him from abuse and neglect.  This conduct was based upon his disabled status."[14]  Essentially, plaintiff asserts that he suffered personal injuries as a result of defendant's employees' abuse and neglect, not that he was denied any benefit or denied the right to participate in any activity.  Plaintiff has identified no authority, and the court's independent research has revealed none, that supports a plaintiff's right to recover under the ADA or the Rehabilitation Act for personal injuries resulting from abuse or neglect.

Perhaps realizing this deficiency, plaintiff seeks to amend his complaint to assert a claim of harassment under the ADA and the Rehabilitation Act.  According to defendant, however, the amendment would be futile because, like plaintiff's original claims, the proposed harassment claim is not a viable  remedy for plaintiff's alleged personal injuries.  Again, this court agrees with defendant.  Plaintiff has presented no applicable and persuasive authority to support his theory.  Some of the cases plaintiff cites are distinguishable because they concern harassment on the basis of disability *in the workplace*.  *See, e.g., Haysman v. Food Lion, Inc.,* 893 F. Supp. 1092 (S.D. Ga.

---

[13]*Id.* at ¶ 40.

[14]*Id.* at ¶ 44.

1995); *Easley v. West,* No. Civ. A. No. 93-6751, 1994 WL 702904 (E.D. Pa. Dec. 13, 1994). Other cases cited by plaintiff are distinguishable because they involve claims asserted against government defendants, not private entities, or because they involve claims for failure to accommodate a disability, not affirmative harassment on the basis of disability. *See, e.g., Tennessee v. Lane,* 541 U.S. 509 (2004) (suit against the State of Tennessee and several counties within Tennessee for failure to maintain proper public accommodations); *Barnes v. Gorman,* 536 U.S. 181 (2002) (suit by a wheelchair-bound arrestee for failure to accommodate his disability during transportation); *Youngberg v. Romeo,* 457 U.S. 307 (1982) (concerning the abuse and neglect of persons committed to *state mental hospitals*); *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173 (11th Cir. 2007) (suit against a private entity for failure to accommodate the need for a service animal); *Wyatt v. Aderholt,* 503 F.3d 1305 (5th Cir. 1974)[15] (also concerning the abuse and neglect of persons committed to *state mental hospitals*).

The only case cited by plaintiff that even remotely supports his theory is *Gaither v. Barron,* 924 F. Supp. 134 (M.D. Ala. 1996). There, a student suffering from hearing loss was corporally punished for failing to turn around in his seat after the teacher

---

[15]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

asked him to do so.  *Id.* at 135.  The student sued under 42 U.S.C. § 1983 for use of excessive force and interference with the plaintiff's "right as a disabled person to be treated fairly and reasonably."  *Id.*  The district court was "not exactly clear what the plaintiff is contending with respect to his disability," because the plaintiff had not invoked jurisdiction under the ADA or the Rehabilitation Act.  *Id.* at 136.  Even so, the court assumed that the plaintiff was asserting a harassment claim under one or both of those statutes, recognized that some "courts have held that harassment is actionable under those acts," and analyzed the plaintiff's purported claim for harassment under a hostile work environment theory.  *Id.* at 136-37.

While *Gaither* does stand for the principle that harassment claims can be asserted under the ADA and the Rehabilitation Act, that holding cannot be extended to create a cause of action against a private entity for disability harassment based on abuse and/or neglect.   The *Gaither* court's concluding remarks on the issue of disability discrimination are instructive in this regard.  The court concluded that, under a hostile work environment theory, the plaintiff's harassment claim was not actionable because the alleged harassment (corporal punishment) was based on the plaintiff's failure to turn around in his seat, not on the plaintiff's disability.  *Id.* at 137.  The court emphasized that "[t]he plaintiff cannot raise a state tort claim to the level of a federal disability claim merely because the plaintiff had a disability at the time the event

occurred." *Id.* That is precisely what plaintiff in the instant case is trying to do. Both the claims he asserts in his original complaint, and the claims he desires to assert in his proposed amended complaint, are for personal injuries allegedly suffered at the hands of negligent and/or wanton employees of defendant. The mere fact that plaintiff suffered from a disability at the time he incurred those injuries does not mean his claims fall under the ADA or the Rehabilitation Act.

In summary, the ADA and Rehabilitation Act claims asserted in plaintiff's original complaint are due to be dismissed for failure to state a claim upon which relief can be granted. Further, because the claim for disability-based harassment plaintiff proposes to add in his amended complaint also would not state a claim upon which relief could be granted, the proposed amendment will be denied as futile.

**B.    State Law Claims**

Jurisdiction over plaintiff's remaining claims — for negligence/wantonness, breach of contract/warranty, outrage, assault, and "combining and concurring" under Alabama law (Counts I, II, III,  IV, and VII, respectively, of plaintiff's original Complaint) — was based upon 28 U.S.C. § 1367, the statute governing supplemental jurisdiction over state law claims. In cases where the court's jurisdiction is based solely upon a federal question, the district court has discretion to entertain state claims that are "supplemental" to the federal claim. See 28 U.S.C. § 1367(a). The district

court may decline to exercise supplemental jurisdiction when:

> (1)   the claim raises a novel or complex issue of state law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   *the district court has dismissed all claims over which it has original jurisdiction*, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). The Supreme Court added a gloss to this statutory language in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), when observing that

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant [now "supplemental"] state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court *should decline* the exercise of jurisdiction by dismissing the case without prejudice.

*Id*. at 349-50, 108 S. Ct. at 618 (emphasis supplied) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness,

and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7, 108 S. Ct. at 619 n.7; *see also L.A. Draper & Son V. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages *or even requires* dismissal of state claims") (emphasis supplied).

Here, plaintiff's federal claims have been eliminated, and there is no independent basis for this court to assert jurisdiction over plaintiff's state law claims.[16] Accordingly, this court must regretfully decline supplemental jurisdiction over the remaining state law claims, and will exercise its discretion to dismiss those claims. The court cannot do so, however, without pausing to note that the allegations of plaintiff's complaint, if proven to be true, would constitute some of the most egregious conduct — and possibly even the first viable case of the tort of outrage — that this judicial officer has encountered during his three decades on the bench.  Plaintiff's counsel is strongly encouraged, therefore, to proceed quickly to the state courts and file plaintiff's claims there, so as to avoid any potential problems with the applicable statutes of limitations.

---

[16]Plaintiff cannot assert federal jurisdiction based on satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332, because complete diversity of citizenship is not present. *See* 28 U.S.C. § 1332(a)(1) (requiring that, in addition to an amount in controversy exceeding $75,000, the civil action must be between "citizens of different States").  Plaintiff and defendant both are residents of Alabama. *See* Complaint, at ¶¶ 1-5.

## V. CONCLUSION AND ORDERS

In accordance of all of the foregoing, defendant's motion to dismiss plaintiff's complaint is GRANTED.  Plaintiff's motion for leave to amend his complaint is DENIED, as any amendment would be futile. It is ORDERED that plaintiff's ADA and Rehabilitation Act claims (Counts V and VI of his complaint) are DISMISSED with prejudice.  Plaintiff's state law claims for negligence/wantonness, breach of contract/warranty, outrage, assault, and "combining and concurring" (Counts I, II, III, IV, and VII, respectively, of plaintiff's Complaint) are DISMISSED, but without prejudice to plaintiff's right to refile them in an appropriate state court.

Defendant's motion to dismiss fictitious parties is DENIED as moot.

Costs incurred herein are taxed to plaintiff.  The Clerk of Court is directed to close this file.

DONE this 13th day of May, 2011.

_____
United States District Judge

-17-